Caryn JACOBS;  Laura JACOBS,
Plaintiffs—Appellants,

v.

KAISER FOUNDATION HEALTH
PLAN INC., Defendant—
Appellee.

No. 04–57131.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 2007.

Filed Jan. 30, 2008.

Murchison & Cumming, Los Angeles, CA, for Defendant–Appellee.

* The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

Before: BRIGHT *, PREGERSON, and WARDLAW, Circuit Judges.

## MEMORANDUM **

Laura Jacobs, and her mother, Caryn Jacobs, appeal the district court's grant of summary judgment in favor of Kaiser Foundation Health Plan Inc. ("Kaiser"). Applying an abuse of discretion standard, the district court concluded that although "Kaiser made it frustrating for Laura to obtain treatment," its decision to deny benefits to Laura for out-of-plan services, on the ground that appropriate treatment was available from a plan provider, was reasonable. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand.

■ The beneficiary of a plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") may bring a civil action against a plan administrator "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Under Laura's Kaiser plan, if a service was medically necessary but not available from a plan provider, Kaiser agreed to approve a request for referral to a non-plan provider, and to cover the cost of the service. Because Laura's plan unambiguously conferred on Kaiser the discretionary authority to interpret terms of the plan and make final benefits determinations, we review Kaiser's denial of benefits under an abuse of

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

discretion standard, "informed by the nature, extent and effect on the decision-making process" of the inherent conflict of interest stemming from Kaiser's role as both the plan administrator and the funding source. *See Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 963–64, 967–69 (9th Cir.2006)(en banc); *Barnett v. Kaiser Foundation Health Plan, Inc.,* 32 F.3d 413, 416 (9th Cir.1994).

■ The district court improperly concluded that Kaiser did not abuse its discretion in denying Laura benefits for out-of-plan services. Kaiser's denial was unreasonable, especially given its inherent conflict of interest.[1]

The record demonstrates indisputably that, contrary to its repeated conclusory assertions, Kaiser did not in fact have available any appropriate care to serve Laura's specific medical needs within its own facilities.

Laura first sought treatment for her bulimia in January 2003. In March, Laura was told of an acute phase outpatient eating disorders group, but it was closed to her as a new patient. The first group open to Laura would begin its cycle over three months later, in June. Kaiser then recommended that Laura attend a Tuesday night "drop-in" group in the meantime, meet with a clinical social worker and make an appointment with her primary care physician, Dr. Chu, for a physical examination. Kaiser's Tuesday night "drop-in" group was inadequate—it met sporadically, and was poorly attended to the point where one night Laura was the only "group" member in attendance. Kaiser cancelled her appointment with Dr. Chu.

■ Meanwhile, various Kaiser doctors, social and clinical workers and psychiatrists were told of Laura's increasing and more frequent binging and purging, abuse of diet pills, depression and thoughts of suicide. As Kaiser made clear to Caryn, however, neither Kaiser's intensive outpatient program nor its partial hospitalization program offered treatment tailored to patients with eating disorders.[2]

Although, in deciding to deny Laura an out-of-plan referral, Kaiser repeatedly told Laura that appropriate care was available to her within the Kaiser system and that Kaiser could have provided her the care she needed, Kaiser never provided the care Laura desperately needed—care that Laura did not receive until she was hospitalized for four weeks at Pacific Shores Hospital in the Rader Inpatient Eating Disorders Program. It was obvious that the care Kaiser provided was not effective—Laura's illness rapidly worsened in her nearly four months of "treatment." Caryn's decision to take Laura outside the Kaiser system may have saved her daughter's life; certainly the care supposedly available at Kaiser had no curative benefit at all.

■ We exercise our discretion in awarding the Jacobses reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1), taking into consideration the following five factors:

(1) the degree of the opposing parties' culpability or bad faith; (2)the ability of

---

1. We note that the district court did not have the benefit of the *Abatie* decision when it filed its own.

2. Revealingly, Kaiser was in the process of developing specific eating disorders components for both its partial hospitalization program and its intensive outpatient program. That Kaiser would eventually have a program to address Laura's needs, however, does not excuse its refusal to provide Laura with the care she needed when she needed it. Kaiser's conclusion that Laura did not need to be treated in an intensive eating disorders program at a time when it did not have its own intensive program is particularly suspect given its conflict of interest.

the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980). Given that throughout the four month period that Laura was under Kaiser's care for her bulimia, Kaiser never legitimately treated Laura despite the urgency of her situation, knew that it lacked any eating disorders program and, rather than refer Laura to non-plan care, essentially allowed Laura's condition to decline to the point where her life was in jeopardy, we find such an award appropriate.

**REVERSED and REMANDED with instructions that Kaiser reimburse the Jacobses for non-plan services and for an award of fees and costs.**